UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No.: 4:21-CV-51-TAV-SKL |
| LAFEVRE CONSTRUCTION, LLC, and JAMES E. LAFEVRE, as Executor of the Estate of James H. LaFevre, | ) | |
| Defendants. | ) | |

# MEMORANDUM OPINION

Before the Court is plaintiff's motion for summary judgment [Doc. 22]. Plaintiff argues that pursuant to Federal Rule of Civil Procedure 56, it is entitled to foreclose its federal tax liens against the proceeds from the sale of real property and have those funds applied against James H. LaFevre's tax debt. Defendants[1] have responded [Doc. 28], and plaintiff has replied [Docs. 29, 30]. Therefore, this matter is ripe for the Court's review. *See* E.D. Tenn. L.R. 7.1(a), 7.2. For the reasons explained below, plaintiff's motion [Doc. 22] will be **GRANTED**, and this case will be **DISMISSED**.

**I. Background**

The facts in this case are largely undisputed [*See* Docs. 23, 28-14, 28-15, 30]. On various dates in 2000 and 2002, a delegate of the Secretary of the Treasury made assessments (the "Assessments") against James H. LaFevre ("Decedent"), doing business

---

[1] "Defendants" refers collectively to LaFevre Construction, LLC and James E. LaFevre.

as Applied Computer Technologies, for tax liabilities associated with withheld income and Federal Insurance Contributions Act taxes, as well as the employer's portion of the FICA, reportable on IRS Form 941, and unemployment taxes, reportable on IRS Form 940 [Doc. 23, ¶ 1; Doc. 23-1, ¶ 14; Doc. 23-2]. Federal tax liens arose on the dates of the Assessments and thereby attached to Decedent's property and his rights to the property [Doc. 23, ¶ 2].

Plaintiff filed a complaint in the U.S. District Court for the Northern District of Indiana to reduce the Assessments to a judgment [*Id.* at ¶ 3; Doc. 23-3]. The court in that case entered judgment for plaintiff in the amount of $3,423,621.48 as of September 30, 2017, against Decedent's estate for the Assessments [Doc. 23, ¶ 4; Doc. 23-4]. The judgment remains unpaid [Doc. 23, ¶ 5]. As of March 20, 2023, the amount of the tax liability is $4,067,075.00, and interest continues to accrue on this amount [*Id.*; Doc. 23-1, ¶ 15].

After the IRS made the Assessments, Decedent obtained title by warranty deed to roughly 100 acres in Coffee County, Tennessee (the "Real Property") [Doc. 23, ¶ 6; Doc. 23-5]. The warranty deed is dated May 24, 2002 [Doc. 23, ¶ 6; Doc. 23-5]. Plaintiff claims that the warranty deed reflects that Decedent paid over $375,000 for the Real Property, whereas defendants contend that the warranty deed reflects consideration of $375,000 for the Real Property [Doc. 23, ¶ 7; Doc. 23-5; Doc. 28-14, ¶ 7]. On November 7, 2003, Decedent transferred the Real Property to LaFevre Construction, LLC

("LaFevre Construction") through a quitclaim deed in exchange for $10.00 [Doc. 23, ¶ 8; Doc. 23-6].

On December 27, 2021, plaintiff brought this action against defendants LaFevre Construction and James E. LaFevre, as Executor of the Estate of Decedent ("Executor"), to foreclose the tax liens on the Real Property [Doc. 1]. On February 9, 2022, the parties agreed to sell the Real Property to a third party but to hold the proceeds in escrow subject to plaintiff's liens and claims that arose before the sale [Doc. 10; Doc. 23, ¶ 10]. The Real Property was then sold, and the parties stipulated that the proceeds of the sale would be held in escrow by the Clerk of Court [Doc. 11; Doc. 23, ¶ 11]. On May 3, 2022, $602,339.12 in proceeds from the sale of the Real Property were escrowed with the Clerk [Doc. 23, ¶ 12; *see* CM/ECF Docket Entry on May 3, 2022].

On March 14, 2023, plaintiff filed the instant motion for summary judgment as to its claims [Doc. 22]. Plaintiff moves for summary judgment under Count I of its complaint, which asserts a lien-tracing theory [Doc. 24, p. 3]. Specifically, it states that under this theory, there can be no genuine dispute about the validity of the federal tax liens [*Id.*]. Plaintiff maintains that if the Court grants its motion on Count I of its complaint, then this matter would be fully disposed of, and the alternative theories asserted under Counts II and III would be rendered moot [*Id.*].

Under the lien-tracing theory, plaintiff contends that the federal tax liens at issue arose on July 3, 2000, July 10, 2000, July 24, 2000, and April 29, 2002 [*Id.* at 4]. Plaintiff states that these federal tax liens encumbered Decedent's interest in both the property he

3

owned at the time and property he acquired later [*Id.*]. Decedent obtained full interest in the Real Property on May 24, 2002 [*Id.*]. Thus, as a matter of law, plaintiff contends that those federal tax liens encumbered the Real Property [*Id.*].

Plaintiff further maintains that when Decedent transferred the Real Property to LaFevre Construction after the federal tax liens had attached to it, those liens continued to encumber the property and thus, encumbered the proceeds that arose from the sale of the Real Property [*Id.* at 5]. Accordingly, plaintiff asserts that the Clerk should be ordered to pay the proceeds of the sale to plaintiff to be applied to Decedent's federal tax liabilities [*Id.*].

Defendants respond that while they do not dispute the facts material to plaintiff's claim, plaintiff did not disclose that the Internal Revenue Service ("IRS") mistakenly allowed a notice of federal tax lien ("NFTL") against Decedent to operate as a certificate of release before Decedent died on January 11, 2013 [Doc. 28, pp. 1–2; Docs. 28-2, 28-3, 28-4, 28-5, 28-6, 28-7]. Further, defendants assert that plaintiff failed to mention that the IRS filed a Revocation of Certificate of Release of Federal Tax Lien to reinstate the federal tax liens on or about September 29, 2014, after Decedent died [Doc. 28, p. 2; Doc. 28-7].

Defendants maintain that this information is relevant to plaintiff's claim because when the IRS mistakenly allowed a NFTL against Decedent to operate as a certificate of release, this event conclusively extinguished the tax lien [Doc. 28, p. 3]. Defendants restate that the IRS filed a revocation of the release and reinstated the lien after Decedent died [*Id.*]. Defendants further maintain that in the period of time between the extinguishment

4

and the revocation, the owner's interest in the Real Property was made a priority over the rights of plaintiff, citing to *United States v. Winchell*, 793 F. Supp. 994, 995 (D. Colo. 1992) [*Id.*]. Defendants also note that the additional liens filed by the IRS after the IRS revoked the certificate of release attached at the time of filing [*Id.* at 4; Docs. 28-8, 28-9, 28-10, 28-11, 28-12, 28-13]. In conclusion, defendants argue that the certificate of release prior to the death of Decedent and the reinstatement after the death of Decedent disrupts the flow of lien attachment and brings into question the owner's interest in the property against that of plaintiff [Doc. 28, p. 4]. Moreover, they contend that the proceeds from the sale of the Real Property should be released to Executor [*Id.*].

Plaintiff replies that its tax liens continue to attach to the Real Property even if one NFTL was inadvertently released [Doc. 29, p. 1]. It maintains that NFTLs only perfect federal tax liens as to certain creditors and bona fide purchasers, which LaFevre Construction is not [*Id.*]. As a result, plaintiff asserts that the federal tax liens remained on the Real Property [*Id.*]. Plaintiff further argues that even if defendants' argument about the released NFTL is correct, it does not change the outcome of this case because plaintiff's other tax liens total over $2 million, which covers the entirety of the proceeds at issue [*Id.* at 1–2]. It maintains that the NFTL that defendants challenge only covers 10 of the 23 tax liens at issue in this case [*Id.* at 2–3]. Furthermore, plaintiff contends that its tax liens survive the death of Decedent [*Id.* at 2].[2]

---

[2] The Court notes that plaintiff also filed a response to defendants' statement of facts regarding the NFTLs [*See* Docs. 28-15, 30]. To the extent any dispute regarding the NFTLs is relevant, the Court will address those disputes in its analysis below.

## II. Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the Court must draw all reasonable inferences in favor of the nonmoving party. *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). As such, the moving party has the burden of conclusively showing the lack of any genuine issue of material fact. *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979). To successfully oppose a motion for summary judgment, "[t]he non-moving party . . . must present sufficient evidence from which a jury could reasonably find for him." *Jones v. Muskegon Cnty.*, 625 F.3d 935, 940 (6th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

## III. Analysis

A federal tax lien is a statutory lien that arises upon assessment of a tax and attaches to "all property and rights to property, whether real or personal," belonging to the taxpayer. 26 U.S.C. §§ 6321, 6322. That lien remains in force until satisfied or rendered unenforceable due to lapsed time. *Mills v. United States*, No. 3:13-cv-01101, 2014 WL 4388279, at *2 (N.D. Ohio Sept. 5, 2014) (citing § 6322).

Here, there is no genuine dispute of material fact that when plaintiff made the Assessments against Decedent, federal tax liens arose on the dates of the Assessments and thereby attached to Decedent's property and his rights to the property [Doc. 23, ¶ 2;

Doc. 28-14, ¶ 2]. There is also no genuine dispute of material fact that the U.S. District Court for the Northern District of Indiana reduced the Assessments to a judgment in favor of plaintiff and against Decedent in the amount of $3,423,621.48 [Doc. 23, ¶¶ 3–4; Docs. 23-3, 23-4; Doc. 28-14, ¶¶ 3–4]. Further, there is no genuine dispute of material fact that the judgment remains unpaid, and as of March 20, 2023, the amount of the tax liability is $4,067,075.00, with interest continuing to accrue [Doc. 23, ¶ 5; Doc. 23-1, ¶ 15; Doc. 28-14, ¶ 5]. Thus, because the Assessments have not yet been satisfied via payment of the judgment, and because defendants have not argued that the Assessments are rendered unenforceable due to lapsed time, the federal tax liens against Decedent remain in force. *See Mills*, 2014 WL 4388279, at *2 (citing § 6322).

The phrase "all property and rights to property" means that Congress intended federal tax liens to reach "every interest in property that a taxpayer might have." *United States v. Nat'l Bank of Com.*, 472 U.S. 713, 719–20 (1985). This definition includes "property subsequently acquired by the taxpayer." *United States v. Dishman Indep. Oil, Inc.*, 46 F.3d 523, 525 (6th Cir. 1995) (citing *Glass City Bank v. United States*, 326 U.S. 265, 267 (1945)).

Here, there is no genuine dispute of material fact that after the IRS made the Assessments, and after the federal tax liens arose, Decedent obtained title to the Real Property by warranty deed, dated May 24, 2002. [Doc. 23, ¶ 6; Doc. 23-5; Doc. 28-14, ¶ 6]. Although the parties dispute the amount of consideration Decedent gave for the property, they both generally agree that Decedent gave consideration of around

7

$375,000.00 for the Real Property [Doc. 23, ¶ 7; Doc. 23-5; Doc. 28-14, ¶ 7]. Thus, because a federal tax lien encumbers "property subsequently acquired by the taxpayer," the federal tax liens encumber the Real Property where the parties agree that the Real Property was acquired by Decedent after the liens arose, with the last lien arising on April 29, 2002 [Doc. 23, ¶ 1; Doc. 28-14, ¶ 1]. *See Dishman Indep. Oil*, 46 F.3d at 525 (citing *Glass City Bank*, 326 U.S. at 267).

Moreover, "[i]t is settled federal law that transfers subsequent to the attachment of a federal lien do not affect the lien in any way." *United States v. Big Value Supermarkets, Inc.*, 898 F.2d 493, 497 (6th Cir. 1990) (citing *United States v. Bess*, 357 U.S. 51, 57 (1958)); *see also United States v. Mason*, No. 19-6417, 2020 WL 5126375, at *3 (6th Cir. Aug. 5, 2020) (affirming the district court's judgment where a taxpayer "was the sole owner of the real property when the government acquired its liens based upon its assessments" and that "the liens were not affected by [the taxpayer's] transfers").

Here, in the absence of evidence to the contrary, Decedent became the sole owner of the Real Property when it was transferred to him, and the Real Property was encumbered by the federal tax liens based on the Assessments against Decedent [Doc. 23, ¶ 6; Doc. 23-5; Doc. 28-14, ¶ 6]. In addition, there is no genuine dispute of material fact that on November 7, 2003, Decedent transferred the Real Property to LaFevre Construction through a quitclaim deed in exchange for $10.00, which was after plaintiff had already acquired its liens based on the Assessments [Doc. 23, ¶ 8; Doc. 23-6; Doc. 28-14, ¶ 8]. Accordingly, the federal tax liens continued to encumber the Real Property, even

8

after Decedent transferred the Real Property to LaFevre Construction. *See Big Value Supermarkets*, 898 F.2d at 497 (citing *Bess*, 357 U.S. at 57).

The parties do not dispute that the IRS mistakenly allowed one of the NFTLs against Decedent to operate as a certificate of release [Doc. 28, p. 2; Doc. 29, p. 2]. The parties also do not dispute that the IRS filed a Revocation of Certificate of Release of Federal Tax Lien to reinstate the federal tax liens on or about September 29, 2014 [Doc. 28, p. 2; Doc. 28-7; Doc. 29, p. 2]. "The IRS may extinguish a federal tax lien by issuing a certificate of release but if the IRS revokes the certificate of release, the lien is reinstated with the same force and scope as the erroneously released lien." *United States v. Peters*, No. 4:12CV01395, 2014 WL 2611813, at *8 (E.D. Mo. June 11, 2014) (citing 26 U.S.C. § 6325(f)(2)(B)). Thus, in light of the revocation of release [Doc. 28-7], defendants' argument that the federal tax lien against Decedent was "conclusively extinguished" after the IRS mistakenly allowed a NFTL against Decedent to operate as a certificate of release is unavailing [*See* Doc. 28, p. 3].

In addition, defendants cite to *United States v. Winchell*, 793 F. Supp. 994, 996 (D. Colo. 1992) for the proposition that in the period of time between the extinguishment and the revocation, the owner's interest in the Real Property was made a priority over the rights of plaintiff [Doc. 28, p. 3]. In *Winchell*, the court stated that "a notice of revocation does not reinstate the prior lien retroactively. Rather, the priority of the United States' lien dates from the filing of the revocation." 793 F. Supp. at 996. In other words, the effect of a certificate of release is that it "may cause the United States to lose its priority over another

9

lienholder who files a notice of lien prior to revocation of the release, but it does not affect a taxpayer's personal tax liability." *Peters*, 2014 WL 2611813, at *8; *see also United States v. Rogers*, 558 F. Supp. 2d 774, 790 (N.D. Ohio 2008) (stating that the effect of a revocation of a release is "that the United States cannot step back into the same priority it previously had among secured creditors"). Thus, the Court must determine whether LaFevre Construction obtained priority over plaintiff's interest in the Real Property.

The Internal Revenue Code ("IRC") defines the validity and priority of federal tax liens against certain persons. Specifically, it states that liens "shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary." 26 U.S.C. § 6323(a). A "purchaser" is defined as "a person who, for adequate and full consideration in money or money's worth, acquires an interest (other than a lien or security interest) in property which is valid under local law against subsequent purchasers without actual notice." § 6323(h)(6).

Here, when the Real Property was transferred to LaFevre Construction, LaFevre Construction did not automatically obtain priority over plaintiff unless it fell into one of the classes of persons protected under § 6323(a). Based on the record before the Court, there is no evidence that as to the Real Property, LaFevre Construction was a "holder of a security interest, mechanic's lienor, or judgment lien creditor." *See* § 6323(a). In light of the quitclaim deed reflecting that LaFevre Construction acquired the Real Property from

10

Decedent for $10.00 [Doc. 23-6], the only category LaFevre Construction could potentially fall into is a purchaser.

However, to qualify as a purchaser, LaFevre Construction must have paid "adequate and full consideration in money or money's worth." § 6323(h)(6). "[T]he term 'adequate and full consideration in money or money's worth' means a consideration in money or money's worth having a reasonable relationship to the true value of the interest in the property acquired . . . ." *United States v. D'Andrea*, No. 09–cv–01940, 2010 WL 3842807, at *9 (D. Colo. Aug. 31, 2010) (quoting 26 C.F.R. § 301.6323(h)–1(f)(3)). "Adequate and full consideration in money or money's worth may include the consideration in a bona fide bargain purchase . . . ." *Id.* (quoting § 301.6323(h)–1(f)(3)). For example, in *D'Andrea*, the court found that the defendant was not a purchaser where, among other factors, "the quit claim deed itself recited consideration of only '$10.00.'" *Id*.

In addition, case law from district courts across the country demonstrates that $10.00 is inadequate consideration under circumstances similar to this case. *See United States v. Chambers*, No. 3:09–cv–961, 2014 WL 2136041, at *19 (M.D. Fla. May 22, 2014) (finding that the transferees of certain properties did not qualify as purchasers where the consideration for the transfers was "about $10.00"); *United States v. Bowden*, No. 2:12–00012, 2014 WL 1289596, at *6 (M.D. Tenn. Mar. 28, 2014) (finding $10.00 to be inadequate consideration for the transfer of real properties); *United States v. Alfano*, 34 F. Supp. 2d 827, 848–49 (E.D.N.Y. Jan. 25, 1999) (concluding that the defendants were not entitled to statutory protection as purchasers where they paid $10.00 for the property,

11

which did not constitute adequate and full consideration); *United States v. Landsberger*, No. 94–0883, 1997 WL 792506, at *8 (D. Ariz. Sept. 30, 1997) (finding the interest of the transferees of real property to be subordinate to the government where the property was conveyed for "ten dollars and other valuable considerations").

Here, LaFevre Construction gave $10.00, "cash in hand paid and for other good and valuable considerations," for the Real Property that Decedent originally acquired in exchange for consideration of around $375,000 [Doc. 23, ¶¶ 7–8; Docs. 23-5, 23-6; Doc. 28-14, ¶¶ 7–8]. Thus, $10.00 does not qualify as "adequate and full consideration in money or money's worth," § 6323(h)(6), meaning LaFevre Construction is not protected as a purchaser under § 6323(a). The Court further notes that a party seeking "purchaser" status bears the burden of presenting proof that he paid adequate consideration, something that defendants in this case have not done nor argued to any extent. *See Chambers*, 2014 WL 2136041, at *19. As a result, LaFevre Construction did not obtain priority over plaintiff's interest in the Real Property.

Defendants compare this case to *Winchell* by quoting the court's statement, "As a matter of law, when the United States released its tax lien on the subject property, the owners' interest in that property became superior to that of the United States." 793 F. Supp. at 995. However, this case is distinguishable because the owner of the property in *Winchell* qualified for the protections of § 6323(a) where he took title to the taxpayer's property "through a judicial sale and execution on his money judgment," thereby making him a purchaser and/or judgment lien creditor. *Id.* As previously

12

discussed, no evidence has been presented in this case to demonstrate that LaFevre Construction falls into any of the categories of persons protected under § 6323(a). *See Mills*, 2014 WL 4388279, at *2 ("It is broadly accepted that § 6323 narrowly applies to specific parties Congress intended to protect by the statute.").

Defendants also seem to argue, without citation to authority, that because the IRS filed the revocation of release after Decedent's death, LaFevre Construction takes priority over plaintiff [Doc. 28, pp. 2–4]. However, "federal law does not provide for detachment or extinguishment of the lien on the taxpayer's death." *D'Andrea*, 2010 WL 3842807, at *10 (finding that because the federal tax liens had already attached to the taxpayer's interest in the property at the time he quit-claimed the property, the taxpayer's death did not extinguish the federal tax liens); *see also Paternoster v. United States*, 640 F. Supp. 2d 983, 991 (S.D. Ohio 2009) (holding that because the government's liens encumbered the property prior to the taxpayer's death, his death did not defeat the already attached liens).

Here, as explained earlier, plaintiff's interest in the Real Property continued after Decedent transferred it to LaFevre Construction, and the revocation of release reinstated the lien with the same force and scope as the erroneously released lien. *See Peters*, 2014 WL 2611813, at *8 (citing § 6325(f)(2)(B)). Thus, the filing of the revocation of release after Decedent's death did not extinguish the already attached liens, and LaFevre Construction did not gain priority over plaintiff for the reasons previously discussed.[3]

---

[3] Having found that defendants' arguments are meritless, the Court will not address plaintiff's alternative argument that the outcome of the case would not have been different if the Court agreed with defendants [*See* Doc. 29, p. 5].

13

Based on the foregoing, the Court finds that summary judgment is appropriate based on plaintiff's lien-tracing theory found in Count I of the complaint [Doc. 1, ¶¶ 15–18]. The Court further finds that granting summary judgment on Count I disposes of plaintiff's alternative theories of relief stated in Counts II and III [*Id.* at ¶¶ 19–38]. Thus, summary judgment will be granted as to all counts in the complaint.

## IV. Conclusion

For the reasons explained above, plaintiff's motion for summary judgment [Doc. 22] will be **GRANTED**, and this case will be **DISMISSED**. A separate judgment and order will enter.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE